UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES DANIEL, JR.,

                Plaintiff,

   v.

SGT. TODD FREDRICKSEN, *et al.*,

                Defendants.

Case No. C11-1667-MJP-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Charles Daniel is a state prisoner who is currently confined at the Monroe Correctional Complex in Monroe, Washington. He brings this civil rights action under 42 U.S.C. § 1983 seeking monetary damages and injunctive relief for alleged violations of his constitutional rights by ten employees of the Washington State Department of Corrections ("DOC") and by the King County deputy prosecuting attorney who prosecuted the criminal case which led to his current incarceration.[1]

---

[1] The DOC employees named as defendants in this action are Sergeant Todd Fredricksen, Sergeant Bob Edington, Sergeant Fuller, CMHPM Eric Marting, Associate Superintendent Chris Glenn, Corrections Officers Crane, Newswander and Gonzales, Counselor Charles Bull, and Superintendent Richard Morgan. Nine of the ten DOC employees have been served. One individual, Chris Glenn, is no longer employed by the Department of

REPORT AND RECOMMENDATION
PAGE - 1

1    The DOC defendants now move to dismiss this action under Rule 12(c) of the Federal
2  Rules of Civil Procedure.  Plaintiff opposes defendants' motion.  The Court, having reviewed the
3  pending motion to dismiss, plaintiff's response thereto, and the balance of the record, concludes
4  that the motion to dismiss should be granted and that plaintiff's complaint and this action should
5  be dismissed with prejudice as to all claims asserted against the DOC defendants.[2]

## BACKGROUND

7    Plaintiff alleges in his complaint that between late 2005 and early 2011 employees at four
8  DOC facilities engaged in a continuing conspiracy to deliberately hinder his meaningful
9  participation in the legal process by depriving him of "core legal materials and documents,"
10 essential to litigate pending cases, without providing proper procedural safeguards such as
11 service of a mail restriction notice and an opportunity to be heard.  (Dkt. No. 13 at 14)  Plaintiff
12 alleges that defendants, through their conduct, violated his rights under the First, Eighth, and
13 Fourteenth Amendments.  The facts relied upon by plaintiff to support his claim are summarized
14 below.
15    On December 23, 2005, plaintiff was housed in the segregation unit at the Washington
16 State Penitentiary ("WSP") when he was advised that he was going to be transferred to the
17 institution's intensive management unit ("IMU").  (*Id*. at 4.)  In anticipation of the transfer,

---

Corrections and plaintiff has been unable to provide a current address.  Thus, Mr. Glenn is not deemed a defendant in this action.  All claims asserted against King County Deputy Prosecutor Donald Raz were previously dismissed from this action.  (*See* Dkt. No. 60.)

[2] Plaintiff submitted an amended complaint to the Court on April 30, 2012, but failed to submit with his proposed amended complaint a motion seeking leave of court to amend.  Plaintiff had previously been advised by the Court that if he wished to pursue amendment, he would have to file a motion to amend and submit in conjunction with that motion a proposed amended complaint.  (*See* Dkt. No. 35 at 2.)  Plaintiff failed to follow that procedure and, thus, the amended complaint is not properly before the Court.  The operative complaint in this action is the original complaint filed by plaintiff in October 2011.

REPORT AND RECOMMENDATION
PAGE - 2

plaintiff prepared six manila envelopes containing legal materials to be mailed out to his brother. (Dkt. No. 13 at 6.) The materials included legal research notes, two books, and correspondence from the state courts. (*Id.*) Plaintiff, at the direction of WSP staff, left the envelopes that were to be mailed in his cell in the segregation unit. (*Id.*) Plaintiff subsequently determined that the correspondence addressed to his brother had never been mailed but had, instead, been opened and one of the books had been removed. (*Id.* at 7-8.) Plaintiff made kite requests to the IMU property officer, and other requests to staff, seeking the return of these materials. (*Id.* at 9.) When these efforts proved unsuccessful, he pursued remedies through the WSP grievance program, apparently in 2006. (*See id.*)

Plaintiff was thereafter transferred to the Monroe Correctional Complex-Special Offenders Unit ("MCC-SOU") where he continued to grieve the loss of the materials he had attempted to mail out from the WSP in December 2005. (*Id.*) When the MCC grievance process failed to provide relief, plaintiff, in October 2007, submitted an internal resolution request to the MCC superintendent to which he received no response. (*Id.* at 10.) In March 2008, plaintiff's mother sent a letter to the MCC superintendent regarding the lost property but received a "negative response." (*Id.*) That same month, plaintiff filed a tort claim concerning the "theft/conversion" of his legal research notes and a legal text. (*See id.* at 18.) In November 2008, plaintiff received a letter from an associate superintendent of MCC which, according to plaintiff, made clear to him that an actual taking of his legal property had occurred.[3] (*Id.* at 10.)

On May 4, 2009, plaintiff was transferred from MCC-SOU to the Washington Corrections Center ("WCC"). (*Id.*) After being informed of the impending transfer by MCC-

---

[3] Plaintiff does not indicate in his complaint what prompted this letter from the associate superintendent.

REPORT AND RECOMMENDATION
PAGE - 3

SOU staff, plaintiff prepared three large envelopes for mailing, one directed to this court and two directed to a prison contract attorney. (Dkt. No. 13 at 10.) The envelopes directed to the attorney contained "core legal materials" needed for preparation of a memorandum in support of a habeas petition. (*Id*.) It is unclear what was in the envelope directed to the court.[4]

On May 12, 2009, plaintiff called the contract attorney to find out if he had received the envelopes. (*Id*. at 11.) The attorney apparently advised plaintiff that he had not received the mail and that a check of this court's case management and electronic case filing system suggested that the court had not received plaintiff's mail either as the documents sent to the court did not appear on the docket. (*Id*.) The attorney indicated that he would call the MCC mailroom to inquire about the mail. (*Id*.)

On May 13, 2009, plaintiff received three postage transfer receipts from a staff member at WCC indicating that the envelopes submitted for mailing on May 4, 2009, had been posted from MCC on May 13, 2009. (*Id*.) However, the envelopes were not mailed but were instead delivered to the WCC mailroom and stamped as received on May 13, 2009. (*Id*.) The materials contained in those envelopes were thereafter withheld from plaintiff for approximately two and a half months during which time he had to re-research and submit his memorandum in support of his federal habeas petition. (*Id*. at 12.) Plaintiff kited the mailroom about the correspondence without obtaining any relief and he also wrote to the attorney. (*Id*.) Plaintiff finally received the envelopes in July 2009 after the contract attorney called the MCC mailroom. (*Id*.)

---

[4] Plaintiff had at least two cases pending in this court at that time, a civil rights action filed under cause number C08-1451-RSM, and a federal habeas action filed under cause number C09-301-JLR. However, plaintiff had no deadlines pending in either case in early May 2009.

REPORT AND RECOMMENDATION
PAGE - 4

1    On October 12, 2009, plaintiff was transferred from the WCC to the Stafford Creek
2  Corrections Center ("SCCC"). (Dkt. No. 13 at 12.) Upon going through his boxes of property
3  following the transfer, plaintiff discovered that handwritten notes related to his habeas corpus
4  petition, the same ones he attempted to mail out from the MCC-SOU on May 4, 2009, were
5  missing from his property. (*Id*. at 12-13.) Plaintiff attempted to grieve the loss of this property
6  through the SCCC grievance program but those efforts were unsuccessful. (*Id*.)

7    On the morning of April 4, 2011, plaintiff was advised that he was being transferred from
8  the SCCC to the WCC and he was forced to draft a document for submission in cause number
9  C08-1451-RSM before his transfer later the same morning. (*Id*. at 13.) On April 6, 2011,
10 plaintiff was transferred again, this time from the WCC back to the WSP. (*Id*.) Once again, after
11 going through his boxes of property, eleven in all, plaintiff discovered that a number of
12 documents had been removed from his property without appropriate procedural safeguards. (*Id*.)
13 Among the missing documents were exhibits related to the May 2009 incident at the MCC-SOU,
14 IRS paperwork, and several receipts from music stores. (*Id*. at 13-14.) Plaintiff's effort to grieve
15 the loss of this property through the WSP grievance program was unsuccessful. (*Id*. at 14.)

16                                                    DISCUSSION

17    Defendants construe plaintiff's complaint as asserting violations of his First Amendment
18 right to access the courts, his Eighth Amendment right to be free from cruel and unusual
19 punishment, and his Fourteenth Amendment right to due process. Defendants further construe
20 plaintiff's complaint as asserting a claim of conspiracy to deprive him of his right to access the
21 courts. Defendants argue in their motion to dismiss that plaintiff's claims are either barred by
22 the statute of limitations or fail to state a claim upon which relief can be granted.

23

REPORT AND RECOMMENDATION
PAGE - 5

1    On October 12, 2009, plaintiff was transferred from the WCC to the Stafford Creek Corrections Center ("SCCC"). (Dkt. No. 13 at 12.) Upon going through his boxes of property following the transfer, plaintiff discovered that handwritten notes related to his habeas corpus petition, the same ones he attempted to mail out from the MCC-SOU on May 4, 2009, were missing from his property. (*Id*. at 12-13.) Plaintiff attempted to grieve the loss of this property through the SCCC grievance program but those efforts were unsuccessful. (*Id*.)

On the morning of April 4, 2011, plaintiff was advised that he was being transferred from the SCCC to the WCC and he was forced to draft a document for submission in cause number C08-1451-RSM before his transfer later the same morning. (*Id*. at 13.) On April 6, 2011, plaintiff was transferred again, this time from the WCC back to the WSP. (*Id*.) Once again, after going through his boxes of property, eleven in all, plaintiff discovered that a number of documents had been removed from his property without appropriate procedural safeguards. (*Id*.) Among the missing documents were exhibits related to the May 2009 incident at the MCC-SOU, IRS paperwork, and several receipts from music stores. (*Id*. at 13-14.) Plaintiff's effort to grieve the loss of this property through the WSP grievance program was unsuccessful. (*Id*. at 14.)

## DISCUSSION

Defendants construe plaintiff's complaint as asserting violations of his First Amendment right to access the courts, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment right to due process. Defendants further construe plaintiff's complaint as asserting a claim of conspiracy to deprive him of his right to access the courts. Defendants argue in their motion to dismiss that plaintiff's claims are either barred by the statute of limitations or fail to state a claim upon which relief can be granted.

REPORT AND RECOMMENDATION
PAGE - 5

More specifically, defendants argue that plaintiff's claims that DOC staff stole one of his books and lost his mail in 2005/2006 are barred by the statute of limitations.  Defendants also argue that plaintiff has failed to state a due process claim arising out of the alleged mishandling of mail containing legal materials in 2009, and the deprivation of "core materials" in 2011.  Finally, defendants argue that plaintiff has failed to state a claim under 42 U.S.C. § 1983 with respect to his cruel and unusual punishment, access to courts, and conspiracy claims.

Plaintiff, in his response to defendants' motion to dismiss, takes issue with defendants' characterization of his claims.  In particular, plaintiff maintains that he is not asserting a claim for damages based on the denial of his right of access to the courts, but is instead asserting a claim of a continuing conspiracy involving the conversion and theft of his personal property.  Plaintiff also indicates that he is asserting a First Amendment claim based on the illegal censorship of his outgoing mail.

While this Court reads plaintiff's complaint as asserting, primarily, a claim of denial of access to the courts, plaintiff's complaint was not a model of clarity and, thus, the Court will accept plaintiff's characterization of his claims as set forth in his response to defendants' motion to dismiss and will address only those claims.

Motion to Dismiss

Defendant seeks a judgment on the pleadings pursuant to Fed. R. Civ. Pro. 12(c).  A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(c) is reviewed under the same standard as a motion pursuant to Fed. R. Civ. P. 12(b)(6).  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  "Dismissal can be based on the lack of a cognizable

legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5]

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court also liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, "'conclusory allegations of law and unwarranted inferences' will not defeat an otherwise proper motion to dismiss." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007) (citations omitted).

## Section 1983 Standard

In order to set forth a *prima facie* case under § 1983, a plaintiff must establish a deprivation of a federally protected right. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The particular harm complained of must be scrutinized in light of specifically enumerated rights. *Id*. That a plaintiff may have suffered harm, even if due to another's negligent conduct, does not itself demonstrate a violation of constitutional protections. *See*, *e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.").

---

[5] Defendants argue that dismissal under Rule 12(b)(6) may occur "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007), the Supreme Court explained that the "'no set of facts' language" set forth in *Conley* "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."

REPORT AND RECOMMENDATION
PAGE - 7

Statute of Limitations

Defendants first argue in their motion to dismiss that plaintiff's claims arising out of actions of DOC staff members at the WSP in 2005/2006 are barred by the statute of limitations. Because plaintiff asserts claims under § 1983, the Washington statute of limitations governing personal injury actions applies. *See Wilson v. Garcia*, 471 U.S. 261 (1985). Accordingly, the applicable limitations period is three years. RCW 4.16.080(2).

Although state law provides the applicable limitations period, federal law determines when the cause of action accrues. *See TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1998). And, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* When a civil conspiracy is alleged in an action brought under § 1983, the accrual of the conspiracy for limitations purposes is determined in accordance with the last overt act doctrine. *Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986). The Ninth Circuit, in *Gibson*, explained this doctrine as follows:

> Under this doctrine, injury and damage in a civil conspiracy action flow from the overt acts, not from the mere continuance of a conspiracy. Consequently, the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff, and separate conspiracies may not be characterized as a single grand conspiracy for procedural advantage.

*Gibson*, 781 F.2d at 1340 (internal quotations and citations omitted).

Plaintiff identifies in his complaint a series of incidents involving the loss of his property that occurred at different DOC facilities at different times over the course of several years, and he alleges that, together, these incidents establish an ongoing civil conspiracy which renders all of his claims timely. Assuming plaintiff has properly alleged a conspiracy, a matter which will be addressed in greater detail below, under the last act doctrine described in *Gibson*, he is still

entitled to recover only for the overt acts which were specifically alleged to have occurred within the three year limitation period.  Because plaintiff signed his civil rights complaint on September 21, 2011, any overt acts alleged to have occurred prior to September 21, 2008, are time barred unless he can establish some basis for tolling the statute of limitations.

Plaintiff argues in his response to the motion to dismiss that he is entitled to equitable tolling of the limitation period.  Just as the forum state's statute of limitations applies to actions brought under § 1983, so to does the forum state's law regarding tolling apply to § 1983 actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).  Under Washington law, "[t]he predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff."  *Millay v. Cam*, 135 Wn.2d 193, 206 (1998) (citing *Finkelstein v. Security Properties, Inc*., 776 Wn. App. 733, 739-40 (1995)).because he properly

Plaintiff first argues that he is entitled to equitable tolling because he adhered to proper pleading procedure for alleging a conspiracy claim and he relies upon the Ninth Circuit's decision in *Wasco Products Inc. v. Southwall Technologies*, 435 F.3d 989 (9th Cir. 2006), to support this argument.  In *Wasco Products*, a case which was brought under the federal court's diversity jurisdiction, the plaintiff sought to toll the statue of limitations in a fraud case by alleging in its opposition to the defendants' summary judgment motion that the defendants were engaged in a civil conspiracy to commit fraud.  *Id*. at 990.  The Ninth Circuit addressed the limited question of whether the plaintiff was required to plead a civil conspiracy in its complaint in order to raise the issue as a means to toll the statute of limitations.  *Id*. at 989-90.  The court determined that because the plaintiff there had failed to adequately allege a civil conspiracy in its complaint, it could not raise the issue as a basis to toll the statute of limitations.

REPORT AND RECOMMENDATION
PAGE - 9

Plaintiff argues that he is entitled to tolling of the limitation period because he adequately pled in his complaint the elements of a civil conspiracy under state law. However, since this is a civil rights action brought under § 1983, the relevant question is whether plaintiff has adequately pled the elements of a conspiracy under federal law. In order to establish liability for a conspiracy in an action brought under § 1983, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional rights. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301 (9th Cir.1999)).

While plaintiff alleges that defendants engaged in a conspiracy, he offers no facts demonstrating that there was any actual meeting of the minds among the named defendants to violate his federal constitutional rights. Plaintiff asks this Court to infer a meeting of the minds among defendants to dispossess him of his legal materials from the fact that he twice attempted, unsuccessfully, to mail legal materials out of DOC facilities when he was transferred without notice between units and/or facilities at times when court deadlines were pending.

The two events which plaintiff principally relies on to support his claim of conspiracy, the alleged 2005/2006 taking at the WSP and the alleged 2009 taking at the MCC-SOU, occurred over three years apart, at two different institutions, and involved corrections staff at three institutions. The fact the institutions were all Washington DOC facilities, and the corrections officers all employees thereof, is not sufficient to establish any meeting of the minds. Plaintiff pleads no specific fact demonstrating that there was any meeting of the minds between the named defendants. Moreover, plaintiff makes clear in his response to the motion to dismiss that his conspiracy claim is based on the underlying state torts of theft and conversion, and not on any

REPORT AND RECOMMENDATION
PAGE - 10

federal constitutional violation.  Accordingly, plaintiff has not adequately pled a conspiracy claim under § 1983 and, thus, the alleged conspiracy cannot act to toll the statute of limitations.

Plaintiff also appears to argue that he is entitled to tolling of the limitation period because he diligently sought relief with respect to the alleged 2005/2006 takings through institutional grievance processes and through an internal resolution request.  Plaintiff contends that defendants acted in bad faith as he pursued remedies through institutional processes by offering false assurances of the possible return of his property for almost three years (from February 2006 to October 2008).  (*See* Dkt. No. 48 at 7.)  Plaintiff maintains that that it was not until he received a letter from the MCC Associate Superintendent in November 2008 that it was clear that a "taking" of his legal property had occurred.

However, the facts asserted by plaintiff in his complaint make clear that the grievance process relating to the 2005/2006 takings was complete, at the latest, by October 2007 when he claims to have filed an internal resolution request with the MCC superintendent.  (*See* Dkt. No. 13 at 10.)  Once that process was complete, plaintiff could have filed a court action raising any viable constitutional claims.  That plaintiff elected to pursue additional relief outside the scope of the institutional grievance process, through a direct appeal to the superintendent of his institution rather than through the courts does not entitle him to equitable tolling.

Plaintiff's constitutional claims arising out of the alleged 2005/2006 takings were filed beyond the limitation period and plaintiff has not established any basis for equitable tolling.  Accordingly, plaintiff's claims arising out of the alleged 2005/2006 takings are time barred.

REPORT AND RECOMMENDATION
PAGE - 11

Due Process

Plaintiff contends that his due process rights were violated when defendants deprived him "of core legal materials and documents essential to pending appellate and civil cases."[6] (Dkt. No. 13 at 4(ix).) The Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. The Supreme Court has held that where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540-41 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). However, the Supreme Court has also made clear that post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. *Logan v. Zimmerman Brush Company*, 455 U.S. 422, 436-37 (1982).

Defendants argue in their motion to dismiss plaintiff's due process claim falls squarely under *Parratt* and *Hudson* because he has alleged an unauthorized and random deprivation of property for which there is an adequate state post-deprivation remedy. Plaintiff asserts that the deprivation of his legal property was not merely negligent, as suggested by defendants, but was instead effectuated pursuant to an established state procedure, although not a formally approved one, whereby pro se inmates challenging their convictions are consistently deprived of their legal property "at times strategically adverse to their endeavors in the courts." (Dkt. No. 48 at 12.)

---

[6] As noted above, plaintiff makes clear that his due process claim arises out of defendants' taking of his property and not out of defendants' interference with his right to legal access.

REPORT AND RECOMMENDATION
PAGE - 12

Plaintiff contends that under such circumstances a pre-deprivation process is feasible and should be required.  (*Id.*)

Leaving aside the 2005/2006 takings with respect to which any claims are time barred, the takings at issue involved the property plaintiff attempted to mail out of the MCC-SOU in May 2009, and the property plaintiff discovered was missing after his April 2011 transfer from the WCC to the WSP.  With respect to the May 2009 incident, plaintiff attempted to mail three envelopes out of the MCC-SOU, but the envelopes were not mailed and were instead re-directed to plaintiff's new facility, the WCC.  The documents were eventually returned to plaintiff in July 2009 and then plaintiff apparently discovered they were missing again after his October 2009 transfer from the WCC to the SCCC.  Nothing in plaintiff's allegations about this property suggest that the alleged deprivations were effectuated pursuant to any sort of established state procedure.  They suggest, instead, a random and unauthorized deprivation for which a post-deprivation remedy is adequate.

With respect to the 2011 deprivation where plaintiff discovered, after being transferred from the WCC to the WSP, that an apparently small number of documents were missing from eleven boxes of his of property, plaintiff fails to offer any specific facts supporting the theory that this deprivation was effectuated pursuant to any established state procedure.

In sum, the deprivations complained of do, as defendants assert, fall squarely within *Parratt* and *Hudson* and, thus, post-deprivation remedies are sufficient to satisfy due process concerns so long as such remedies are provided.  Washington State provides a post-deprivation remedy for the alleged tortious conduct of state employees under RCW 4.92.  Plaintiff does not allege any due process inadequacy in the tort remedy provided under RCW 4.92 and, thus,

REPORT AND RECOMMENDATION
PAGE - 13

plaintiff has not alleged a viable due process claim with respect to the loss of any personal property.  Accordingly, defendants motion to dismiss plaintiff's due process claim should be granted.  plaintiff fails to allege any viable due process claim.

First Amendment

Plaintiff also alleges that his First Amendment rights were violated when defendants illegally censored his mail by failing to post the mail he attempted to send out of MCC in May 2009.  The Supreme Court has specifically recognized that inmates enjoy a First Amendment right to send and receive mail.  *See Thornburgh v. Abbott* 490 U.S 401 (1989).

In *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. at 413-14, the Supreme Court established a standard for evaluating First Amendment claims concerning outgoing correspondence sent by prisoners.  *Martinez*, 416 U.S. at 412-13.  Under that standard, censorship of prisoner mail is justified only if "the regulation or practice in question [ ] further[s] an important or substantial governmental interest unrelated to the suppression of expression" and "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved."  *Martinez*, 416 U.S. at 413.

The facts alleged by plaintiff simply do not demonstrate that his May 2009 attempted mailing was censored.  The facts establish that the mail was, at most, mishandled.  This is evidenced by the fact that the documents were eventually returned to plaintiff.  Plaintiff's complaint that he received no mail rejection notice is readily explained by the fact that the mail was not, in fact, rejected.  Plaintiff fails to adequately state a viable First Amendment claim and, thus, his complaint should be dismissed with respect to any such claim.

REPORT AND RECOMMENDATION
PAGE - 14

CONCLUSION

Based upon the foregoing, this Court recommends that the DOC defendants' motion to dismiss be granted and that plaintiff's complaint, and this action, be dismissed with prejudice with respect to all claims alleged against the DOC defendants. A proposed order accompanies this Report and Recommendation.

DATED this 20th day of February, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge